*KIT CARTER CATTLE CO. v. EDWARD M. McGILLIN ET AL.

1. PREFERENCES BY CORPORATIONS—OHIO RULE—OTHER STATES.

The rule of Rouse, Trustee, v. Merchants National Bank, 46 Ohio St., 493, that " a corporation for profit, organized under the laws of this state, after it has become insolvent, and ceased to prosecute the objects for which it was created, cannot, by giving some of its creditors mortgages on the corporate property to secure antecedent debts without other consideration, create valid preferences in their behalf over other creditors, or over a general assignment thereafter made for the benefit of creditors " has reference to the relation existing between the corporation and its creditors, and affects the remedy of the creditors, relative to procedure. It is a construction of the general laws of Ohio, affecting powers of corporations in Ohio, and is not a limitation upon organic powers which the courts of another state, by the laws of comity, must recognize against creditors of that state.

2. RULE APPLIED TO PREFERENCES IN PENNSYLVANIA.

Under the foregoing rule, a preference, preceding an assignment for creditors, made by a corporation organized under the law of Ohio, but having subsequently removed its property and business to Pennsylvania where it became insolvent, to secure *bona fide* debts, to creditors non-resident of Ohio, through the medium of judgment notes, whereon judgments were taken in Pennsylvania and property seized and sold in accordance with the laws of that state, is not invalid under the Ohio laws. Therefore, where, by agreement between the judgment creditors in Pennsylvania, a trustee was appointed to purchase the property of the corporation at judicial sale, who continued the business until the judgments were paid in full, when the property was turned over to a stockholder, who was also a creditor, removed to Ohio, and acquired by another corporation, a fund realized from a sale by the latter to a third party is not subject to claims of creditors of the first corporation, or available at the suit of a trustee appointed by the probate court in Ohio, under a filing in Ohio of a copy of the deed of assignment made in Pennsylvania.

APPEAL.

*Gilbert & Hills*, for plaintiff.

*Foran, McTighe & Baker; J. H. Clark; N. C. McNabb et al.*, for defendants.

HALE, J.

The case of the Kit Carter Cattle Company against Edward M. McGillin and others comes into this court on appeal by defendant William J. McGillin.

The plaintiff, after the trial below, dropped out of the case, and no claim is made here in his behalf. The issues which have been tried, are

---

* For decision of the court of common pleas (Neff., J.), see 10 Dec., 146.

made upon the cross-petition of McNabb, assignee of the E. M. McGillin Company, and the cross-petition of the creditors of the company, suing in their behalf.

We have spent so much time in the reading of the extensive briefs and in the examination of the evidence, that we have not formulated any very extensive opinion in the case. I will state the facts necessary to the conclusions reached, and then the conclusions.

The E. M. McGillin Company was incorporated under the laws of this state, on December 26, 1891. The object and purpose of the corporation was to deal in general merchandise at wholesale and retail. After its incorporation, it prosecuted its business in the city of Youngstown until September, 1895; it then closed out its business in that city, and removed to the city of Pittsburg, in the state of Pennsylvania. It continued to prosecute the business for which the corporation was formed in the latter city until April, 1896. On April 10, of that year, at a meeting of the board of directors held in Pittsburg, a resolution was passed, authorizing the delivery of judgment notes to four of its creditors : one to W. J. McGillin, for the sum of about $23,000; one to Shade & Company, for $4,567.50; one to Arbuthnot, Stephenson & Co., for $1,400; and one to Mary O'Neil, in trust for the National Bank of Pittsburg, and A. Mellon & Son, doing business in Pittsburg, $20,000, aggregating in all about $50,000.

All these notes, as I have said, were dated April 10, 1896; they were due one day after date; they were held until they became due, by the president of the corporation; and were then delivered into the hands of an attorney, and judgment in the courts of Pennsylvania entered upon these cognovit notes. A levy was made upon the entire property of the corporation.

After the levy, an agreement was made between these judgment creditors looking to the purchase of the property at the sheriff's sale, and the running of the business after the sale, that these judgments might be realized. The substance of that agreement was that one Mitchell, as trustee, was to attend the sale and purchase the property for and on behalf of these judgment creditors, and he was to see to it that the property did not sell for less than $20,000. It was then agreed that, having purchased the property, the business should be presecuted by him in Pittsburg until sufficient was realized to pay off the judgment creditors, other than W. J. McGillin. When that was done, the trustee, who was to purchase this property, was to assign the remainder of the property over to W. J. McGillin.

This agreement was carried out. The trustee purchased the property, continued to prosecute the business in Pittsburg until July 13, 1896, carrying it on in the usual way, purchasing and replenishing the stock. On July 13, 1896, these creditors, the bank in Pittsburg, Mellon & Sons, and Schade, having realized the amount of their judgments, or the judgments that were taken in their behalf, the assignee, in pursuance of the original agreement, transferred all the remaining property over to W. J. McGillin, who ran the business for awhile in Pittsburg. He then removed all the property, including fixtures, formerly, belonging to the E. M. McGillin Company, and which had been assigned to him in the way I have named, to Cleveland. He caused to be organized the E. M. McGillin Dry Goods Company, and this property was made over to that company.

Cattle Co. v. McGillin.

That company continued to do business here in this city in the usual way of running a dry goods business, until March 1, 1898, buying and selling, and using the property precisely as if he owned it.   When the dry goods company sold out all the property, including merchandise and fixtures, to Samuel Weil, for the sum of $52,000, after paying the debts of the dry goods company, there remained in the hands of the dry goods company, or belonging to it or somebody else, $36,000.

Soon after the giving of the notes in Pittsburg as I have stated, the company made an assignment, a general assignment for the benefit of creditors, in Pittsburg.   It filed no copy of the deed of assignment, in Youngstown, Mahoning county.   But some of the creditors, believing that to be the home of the corporation, caused a copy of the deed of assignment to be filed in the probate court of Mahoning county.   The probate court took jurisdiction of the subject-matter, and removed the assignee that had been appointed in Pittsburg, so far as he had the power to do, and appointed Mr. McNabb as trustee for the benefit of the creditors.

It will be seen, then, that all the property of this corporation at the time of the transactions that are questioned here, was located in the city of Pittsburg, in the state of Pennsylvania.   The judgment creditors were all non-residents of Ohio, except Schade; two of them resided in Pittsburg, Pennsylvania.

The notes were given ostensibly for antecedent debts which the corporation, The E. M. McGillin Company, owed at the time.

The trustee, having been appointed by the probate court of Mahoning county, prosecutes this action in behalf of the creditors of the E. M. McGillin Company, to gain possession of the amount remaining from the sale made by the dry goods company in March, 1898, claiming it to be the property of the E. M. McGillin Company.

Not questioning, or stopping to question, the regularity or legality of the appointment of the trustee by the probate court of Mahoning county, it it best, perhaps, to consider the rights and claims of the creditors of the E. M. McGillin Company as against these judgment creditors. Whether that is done upon the petition of the assignee or the petition of the creditors, it makes no difference. . Certain rights must be examined into and determined as between these two claimants.

The proposition largely relied upon by the assignee in behalf of the creditors, is based upon the proposition of law announced in Rouse, Trustee, v. Merchants National Bank, 46 Ohio St., 493, the syllabus of which is:

" A corporation for profit, organized under the laws of this state, after it has become insolvent, and ceased to prosecute the objects for which it was created, cannot, by giving some of its creditors mortgages on the corporate property to secure antecedent debts without other consideration, create valid preferences in their behalf over the other creditors, or over a general assignment thereafter made for the benefit of creditors."

It is claimed that this rule of law became and was a part of the organic law of this corporation, which must govern it.   And it may be conceded that if this transaction which we are investigating, that took place in Pittsburg, had taken place within this state, it would have been an attempt to make an unlawful preference in the favor of one creditor against the others, and could be at least questioned by the creditors, and. at their instance. held to be invalid.   But this transaction did

not take place in Ohio. It took place in the state of Pennsylvania; and the claim is made that because this was an Ohio corporation, the same result must follow, although all the property of the corporation was in Pennsylvania at the time, and although the notes were given in Pennsylvania, the judgments taken in the courts of Pennsylvania, and the property seized in that state and sold in accordance with the laws of Pennsylvania.

This result is said to follow from the fact that the charter of the corporation forbade the acts to be done that were done by the corporation; that the organic law of the corporation conferred no such power upon the corporation; and the question is, can this claim in behalf of the creditors be sustained?

While it is conceded that these preferences could not be sustained under the laws of this state, we think it equally clear that under the laws of Pennsylvania the preferences were legally made, and could not there be questioned by the creditors. Indeed, some of the creditors, in whose behalf this claim is made in this case, sought, in proceedings under the laws of that state and in the mode therein provided, to question the validity or this transfer and were there defeated.

Does the organic law of the corporation control? Is the rule of law announced in the Rouse, Trustee, v. Merchants Natl. Bank, *supra*, case a part of the organic law of this corporation, and does that control?

By the law of comity existing between the states, a corporation, chartered in one state, may prosecute its business in a sister state. This law of comity exists at common law, independent of statute; but most of the states have dealt with this question by statute, and have prescribed the limitations and conditions by which a foreign corporation may transact business within its state.

In a general sense, it is undoubtedly true that a corporation can make no contract and do no act either within or without the state in which it is created except such as are authorized by its charter. A corporation, organized to do banking business in Ohio, could not go into Pennsylvania and do a general merchandise business, and the like. But corporations in Ohio are chartered under general laws, and under sec. 3236, Rev. Stat., must specify the purposes for which such corporation is formed, and its business must be such as therein expressed, whether prosecuted within or without the state.

While by the law of comity this corporation was enabled to prosecute its business authorized by its charter, in Pennsylvania, we think it must do this, subject to the laws and regulations of that state.

The trust doctrine, announced in Rouse, Trustee, v. Bank, *supra*, does not relate to an affirmative, active power of the corporation, but has reference to the relation existing between the corporation and the creditors, and affects the remedy of the creditors, relative to the procedure and not to the organic power. Under the doctrine of this case, certain acts of the corporation, relating to the distribution of its property in this state to its creditors after insolvency, are forbidden, but such prohibition is not binding upon the courts of other states, and does not affect the rights of the creditors to secure and collect their claims by any and all methods known to the laws of that state. The law of comity which permits this corporation to extend its business into another state, does not deprive courts of the latter of their jurisdiction to adjudicate and determine the rights of creditors to property within that state, over which it has dominion. The prohibition upon the powers of the corpor-

ation, announced by Rouse, Trustee, v. Bank, *supra*, is not the organic power of the corporation which the courts of a sister state by the laws of comity must recognize as against creditors of that state. It is a construction upon the general laws of this state and affecting the powers of the corporation, given by the courts of this state, which the sister state is not bound to recognize.

So we hold upon this proposition, against the assignee, and that the judgment cannot for this reason be attacked by the creditors.

These propositions are supported, to some extent, by a large number of cases which were fully digested in the briefs on both sides: 105 Pa., 209; 51 N. J. Eq., 541; 170 Pa. St., 1; 161 Pa., 17; Memphis City v. Dean, 75 U. S., (8 Wall.) 64, 68.

It is, perhaps, needless to refer to these cases as there are a perfect forest of them referred to in the briefs which we have examined. But our conclusion is as I have announced.

Now, again it is claimed that notwithstanding these preferences might be sustained in Pennsylvania, if rightly done and carried out, the judgments were collusive and fraudulent, and the whole transaction was collusive and fraudulent, and, therefore, not binding upon the creditors of the corporation, and that they may enforce their rights here.

To sustain this proposition, it has seemed to us that it was necessary to establish one of two propositions:

First: That the judgment notes given, were without consideration; or, second: That, in suffering the judgments to be taken in behalf of a few of the creditors by the corporation, there was an unlawful preference to the prejudice of the other creditors, tending to hinder and delay the collection of the debts. One of two of these must exist.

That these judgments were suffered by the corporation to give a preference to some of its creditors, cannot be doubted. The corporation was insolvent, at the time had ceased to prosecute its business, and undertook, in that situation, to prefer some of its creditors to others. But, by the discussion so far, it will be seen that we have held that as to the property in Pennsylvania, this could be done although this was an Ohio corporation; that this was accomplished by the courts of that state and in a manner not to be questioned by the creditors of the E. M. McGillin Company. Some force must be given to the fact that the courts of Pennsylvania have sustained these preferences, and it was carried out only by the judgment of the courts of that state. If we turn to the question, whether there was a consideration for these notes, we find it practically conceded, that all of the notes except the one given to W. J. McGillin, were for actual *bona fide* indebtedness then existing and due. Examining the claim of W. J. McGillin upon the weight of the proof submitted to us, we can but find that his claim also was a valid claim against that corporation.

So that all these notes upon which these judgments were taken, were given by the E. M. McGillin Company in the state of Pennsylvania to secure antecedent debts of the corporation which it owed, *bona fide.*

It will not do to say that the giving of a note, a judgment note, by an insolvent, for an antecedent debt, is a fraudulent transaction. It may be done by an individual and done everywhere in this state and elsewhere. It can be done in this state by an individual, and not by a corporation, because of the doctrine announced in Rouse, Trustee, v. Merchants National Bank, *supra*, to which I have referred; and, if all there is to predicate actual fraud upon, is, that these notes in Pennsylvania

were given for an antecedent debt, the proposition can not be sustained.

Finding, then, as we do, that these notes were given for a full consideration, to secure the existing indebtedness, there was no fraud or collusion in the transaction, independent of the question made based. upon the fact that this corporation in Pennsylvania could not prefer a creditor.

It will, therefore, be seen that the proper disposition of the case· depends largely, if not wholly, upon the correctness of our holding upon the first proposition.

Beyond the fact of preference, there was no fraud or collusion in these judgments. We think it will not do to adjudicate a transaction to· be fraudulent, which was and is valid by the laws of the state where it was had and which has been sustained and sanctioned by the courts of that state.

It will be seen, and we intend to lay stress upon the fact that this· preference was worked out through the courts of Pennsylvania, where· the property was located and where the whole transaction took place, and where the sale was made, and where such preference was legal under the Pennsylvania laws. If we are right about this proposition, we are right about the disposition of the case.

This is our best judgment: That the creditors can not in this proceeding question this preference that was made in Pennsylvania.

The decree will be entered, dismissing the cross-petition. Counsel, will prepare the decree accordingly.